My name is Michael Capels. I'm the appellant. I think I'm the only one here today. First thing I should do is thank the court for accommodating my earlier absence. I appreciate that. And I guess ask first, does the court have any questions that I should answer before I... I wasn't sure from the record. Was Ms. Dietrich considered to be a speaking agent of Combined Insurance? Ms. Dietrich was not a speaking agent. Was that Detrick? Detrick. She was not considered a speaking agent. No. She was an employee with some management responsibilities, but she was not a speaking agent. She was an assistant sales representative, right? Or sales associate? Yeah. It was kind of an odd situation because she was essentially the sales support in Oregon for a number of salespeople. So she was on her own up there. And in that capacity, that's why I say she had some management role. But she was not a speaking agent. I never contended she was. Perhaps we're thinking on the same lines, but I didn't understand why you thought the attorney-client privilege ever applied to her because she was a low-level fact witness. Well, there were two reasons for that, Your Honor. One was, first and foremost, was we represented her at her deposition. No, you weren't her attorney. Certainly, you were objecting. Sorry? I mean, the fact that you appear at a deposition with an employee doesn't mean that employee is necessarily your client. No, no, not necessarily. But in this case, it did. And we established at the deposition. I didn't understand. I don't understand that. I don't understand how even unless she was your client in some matter, I don't understand what it means to say that you represented her. It seems like she's just a witness on your side. And she's perhaps an employee such that there's attorney-client privilege that applies to her. But that's not the same thing as representing her. Well, Your Honor. I don't see why you would have a fiduciary duty to her as you would with somebody you represented. Certainly, in many cases, that would be the case. We would not have a fiduciary duty in that sense. In this case, at the deposition, we established that we were representing her. We represented the company and her. What do you mean by representing? Was she your client? She was our client at that deposition. Combined insurance was also our client. She retained you to represent her or agree that you should represent her? At combined cost, yes. That's exactly right. And that was established at the deposition. Well, you were going to be there anyway. That's right. Your firm was going to be there anyway. Yeah. We would be there anyway. So there was no additional expense to her under any circumstances. Let me ask you this. It's on the record. But, I mean, I assume you didn't establish in the record that she approached you first for representation. No. The chain of events in that is set forth in the Dena Graf Declaration. Right. And I have to go on the deposition because I wasn't there. But Dena Graf asked her, said, do you want us to represent you? Yes, we're going to represent you. Put it on the record at the deposition, all communications, she was not a speaking agent, but all communications thereafter until they contacted her to come to trial were through our office. On the record at the hearing, the judge was careful to establish whether or not there was that. And she said, yes, there was. I understood there was this attorney-client relationship. She said she was confused. She said she was confused about that does appear in that exchange, but I'm still not clear what she was confused on. But if you read the exchange, she, at the end of it, says, yes, there was that relationship. And that was where it ended. And then we agreed that the judge could go ahead and speak with her. Just speaking for me, I just don't think that's enough to establish an attorney-client relationship. There are some cases, I don't know in this circuit, but certainly in other circuits, where if you're talking about a low-level fact corporate employee, in order to establish an individual representation, you have to establish that the employee came to you first, not that you came to her on behalf of the corporation and said, do you want us to represent you? Because, of course, the employee is going to say, well, sure. What other choice did they have? Well, they have the choice of saying no now. And getting their own counsel. Well, the truth is, Your Honor, I've had that happen. So, I mean, in her case, it didn't. But if I can just make a point. What does that mean, representer? I'm trying to think what it could mean. And I'm thinking, suppose that you ask the question, it wouldn't come up in this case, I don't think. But, of course, I don't know the case within the case at all well, or at all. You could have a situation where if you ask the employee a question and they answer it truthfully, it's very beneficial to the corporation, which is your main client. But it tends to incriminate the employee who answers it truthfully. So, in that case, if you represented the employee, you'd tell them to refuse to answer. If you represented the corporation, you would just sit there and wait for the answer, since it would be good. And if you represent them both, you've got a problem. That's absolutely right. You can't represent them both. Well, not in that case. In that situation. My hypothetical. That's right. But that was not what we had here. And any time we get in a situation. So what does it mean, then, to represent her at the deposition? I'm trying to think of some other way that you do anything when you represent a witness. What did you have to do differently at the deposition because you represented her that you would not have had to do if you were just there for combined? For example, if she was not a speaking agent. Oh, she's not a speaking agent. Right. So if she's not a speaking agent and a question is asked that for whatever reason, a privacy issue, some other. I'm not able to instruct her not to answer. I have to represent her to do that. As her attorney, we could do that. As her attorney, we could interpose not only the objection, but we could issue the instruction. I couldn't do that if I didn't represent her. So that is just one example. But that didn't occur, did it? I'm sorry. That did not occur. I don't recall whether there were any instructions not to answer in the deposition or not. Whether it occurred or not isn't really the point, though, because going into the deposition, you don't know what's going to happen, at least not always. I don't understand how you could instruct her not to answer. Well, I'm thinking more about the case. It is a sexual harassment case. Right. So there could very well be some question that was where the answer would be helpful to the corporation, but unpleasant or embarrassing to the deponent or perhaps damaging in her personal life. I'm sorry. I would think if I represented the corporation, I'd just let her go. Let her go? I'm not sure what that means. Testify. Or answer. Well, in this case, she was removed from that situation. In fact, the sexual harassment piece of the case was gone by the time all this came up. It was a discrimination case. We looked at the case, and given her relationship to the parties and the fact that she was up in Oregon and what her role was, we assessed that there was no significant likelihood of a conflict happening. We normally make those calls right. We're not normally wrong. Let me get more concrete. Sure. Suppose that plaintiff's lawyer asks her, did the boss say in your hearing that the reason he wasn't promoting Tuttle was some forbidden reason? And you say, I instruct you not to answer that. Can't she say, who are you to instruct me? I'm going to answer it. Yeah, I heard him say that. She can always ignore the instructions of her attorney. Anybody can do that. Judge Layton has a question. I wanted to change gears just a little bit. Okay. And it goes to the night before the court testimony was to occur. Right. And the question for you is, as an officer of the court, did you have any responsibility at all to countermand what I thought was Hudson's highly suggestive and repetitive, I might add, admonition that she could leave if she wanted to? Your Honor, that's really the crux of this. And the whole attorney-client relationship thing is, I think we got a little bit sidetracked with that. Because did I have a duty? I had a duty, I think, to caution the client about what they were doing. Now, you know, this is a very awkward situation because I'm not in a position where I can waive the privilege. I mean, the client has to do that and the client didn't. Which client? Combined, in this case. So who were you representing in that room that evening? Were you representing her? I believed I was representing both. And here's how that shook out. I think you're representing the court at that point. At that point, when your public obligation is in conflict with your private responsibility, doesn't on some level your public responsibility as a lawyer trump, I mean, you strike me as a very nice guy and a very capable lawyer. So I don't mean to be kicking sand in your face. But at that point, doesn't your public obligation trump your private responsibilities to a client? Let me explain how I dealt with that. And because what this really comes down to is, is there any evidence in the record that I did anything inappropriate? I think the answer is clearly no, there isn't. The record shows I had nothing to do with, you know, I have the authority to send you home. And that I'm comfortable saying because Elliot Hudson said that in his own declaration. My only dealing with that, with the client, was a caution that, you know, I didn't think this was a good idea and I didn't think there was any reason not to have her testify because frankly, not much of what she said was going to get in anyway. You're talking your corporate client now. I'm sorry? You're talking, you say your client. That was the corporate client. See, this is the problem I have and I hope you'll address this, is that we start off by talking about the attorney-client privilege. I don't, I don't, as I, you've heard my views that I don't think necessarily she became your client. But you believed, you believed that she was your client. I did. So she's sitting in the room there and you've got your corporate client sitting in the room there and your corporate client is telling your individual client not to testify. No, that's not, that never happened. Well, basically, I have to agree with you. No. Well, if you're going to quibble on the facts, we can't continue the discussion. I know. And I know, I understand completely. And I don't, I'm not, I know how personal this must be. So I appreciate your, but let's assume for the sake of argument, you're sitting there and assuming that you're, that hypothetically, that your corporate client is trying to stop your individual client from testifying. You're in a worse position, it seems to me, ethically, and then you put the layer on of the responsibility of the court. Yes. How do you sort that out for us? Well, let me tell you how I sorted it out. And it may be that I didn't do it as well as I could or should have. I don't think that's the case. I think I did, I did the best that could be done. And, Your Honor, Judge Kleinfeld, I did, I did find myself in an awkward position. I did represent combined. I said, not a good idea, no reason not to, just, you know. She said, because she was very upset about having been brought down there and basically cooling her heels for two days. She said, well, do I have to go home? What do I do? I said to her, I'm assuming you're going to testify tomorrow. I have to prepare you for that testimony. And I assure you that if you choose to stay or if you choose to go, absolutely nothing will happen to you that is adverse. And I will be sure of that. Now, that was something that put me perhaps a little bit at odds with the client. And it was a situation I found myself in that perhaps I shouldn't have allowed to in hindsight have happened, but it did. The bottom line, though, is with respect to my interchange with her, I could only caution the client. She wasn't my employee. I thought she was my client, and I could advise her. And I felt duty-bound to advise her. When she said, do I have to stay here, I'm not here under subpoena, I thought I represented her. I still think I represented her. I had no choice. I had to say the truth. I had to say, no, you don't have to stay here. You don't have to go either, but you don't have to stay. That's what I did. I assured her nothing negative would happen, and I told her, I assume you're going to stay and testify, and I'm going to prepare you for your deposition. And after that evening, I had no contact with her. I had no discussion with her. Now, the only other thing that ‑‑ See, this puzzles me, because if you really think she's your client, and you stand up in court the next day and you say, I don't know what happened to her, if you have ‑‑ if I do share a duty to her and a representative duty to the court, at that point, you had a ‑‑ I just don't understand your answer. I guess. Well, the answer to her? No, the answer to the judge that you didn't really ‑‑ Well, the answer to the judge is actually easy to understand, because it was the truth. I had no contact with her after that evening. She did call her employer. And again, I understand this is complicated and confusing. She called her employer. She spoke with Elliott Hudson, who was the employer's representative. He dealt with her. I had no ‑‑ I just don't know what was in those exchanges. When the judge asked the next day, and the record bears this out. When the judge asked the next day, where is she? I was not hesitant. I gave him every single bit of information I had, including some speculation, which was, Your Honor, I don't know where she is. I'm assuming she went home. And that was the truth. If I had more, I would have given him more. The fact that I was ignorant of that is not sanctionable. She was free to speak with Elliott Hudson as much as she wanted without involving me. She was free to do that. And again, Your Honor, looking back on it, there are certainly things I would have done differently. You know, you're in the heat of trial and things are happening pretty fast. That's not the question, I don't think. The question is, did I do anything that was inappropriate, that was sanctionable? I think clearly the answer is no, I didn't. Counsel, there were two things here that were of concern to me, and I'd like you to respond. One is, I'm confused about something in the record. The way I prepare, I read the record first and dictate some notes, and then law clerks read it and advise us. Certainly. And I thought I saw something in there where you said, I haven't talked to her, which was, of course, a red flag. But then it looked to me, like you said, indeed I did meet with, and then it looked like the judge cut you off. But I can't remember where I saw that, and maybe my memory is not accurate. And he said he'd talk to you later. And then later on, when the judge asked more questions, he said, I assume she's gone home, though I don't know. Could you clarify what the facts were, which hearings were when and where, and whether you did get cut off when you tried to explain? Oh, boy. And I'm not sure I can. What happened was on Wednesday is when all this came about. I remember that. On Wednesday, I believe it was Wednesday, that the judge asked, where is she? I marked some things here, so maybe I can – I apologize for taking the Court's time. Okay. On page – it's probably around page 113 of the record. That's where I said I understand she's not here. I haven't talked to her. I think that might be where you're talking about. Yes. I haven't talked to her is the one statement that if it were not explained would be a lie. Well, I never – I mean, at this point, we all – it had been well established that I'd spent the two hours with her. I didn't talk to her the evening before preparing her. So, I mean, what I was saying was I hadn't talked to her about, you know, about where – I didn't know where she was because I hadn't talked to her. I – my impression was the same as what you say from the context, that it was not a lie because it was clear that you were just talking about I haven't talked to her about where she is now, not I haven't talked to her at all. Correct. What I want is clarification on not your state of mind, but what could reasonably be the judge's state of mind. Where is the context made clear or where do you attempt to make it clear that what you're saying is I haven't talked to her about why she's not here this morning as opposed to I haven't talked to her at all? Oh, I see where it is. Never mind. I found it myself. It's on 112. And then, again, on page 130 – and I can't recall, I think this might be the next day, Thursday – he says, I'm going to take him at his word that he doesn't know where she is. And I said, I'm not going to be coy about it. I'm assuming that she is and I believe that she probably – I'm assuming that she is and I believe that she probably is home. But is she – I just – I don't know. And I didn't. I had no idea. Thanks. My other question is, it looked to me like the judge thought that you were moving around – moving her around in hotels so that the plaintiff's lawyer couldn't find her. The counter to that is, no, she wanted to move hotels because she wanted to be at the airport since she had to take such an early morning flight. Correct. As I understand the record, Hudson and Ms. Dietrich did the whole hotel business and you had nothing to do with it. It was after you had left. It was on the phone with Hudson and you didn't know about it. Is that true? That's correct. I just didn't have anything to do with it, like I said, after that night. And, in fact, I should point this out because it may occur to one of the judges. That next morning, although it did not occur to Magistrate Beck, but I guess the question – I shouldn't even say this. The question could be raised, well, didn't Mr. Hudson tell you what he'd done? And the answer was, no, I hadn't seen him yet that morning. So I was as much in the dark when all this was going on that morning as I was the night before. Right. But to get back to Judge Kleinfeld's question, Hudson asked her to go to his hotel and then she decided she wanted to go to the airport. That's apart from – that's the statement. That's what I understand that happened, yes. Yes. No, I assume that you hadn't talked to him that morning. Otherwise, I would have said so. Any further questions? Anything else you want to conclude with? Thanks very much for your courtesy. Well, thanks for coming here personally, because it would have been easier to send someone. But it was important to hear from you.
judges: Kleinfeld, Thomas, Leighton